IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DISABILITY RIGHTS FLORIDA, INC.,
a Florida non-profit corporation,

                Plaintiff,

v.                                    CASE NO. 8:10-cv-2666-MSS-TGW

GRADY JUDD, in his official capacity
as Sheriff of Polk County, Florida,

                Defendant.
_____/

## PLAINTIFF'S TRIAL BRIEF

COMES NOW the Plaintiff, DISABILITY RIGHTS FLORIDA, INC., d/b/a Disability Rights Florida, by and through its undersigned attorneys, and submits herein its Trial Brief pursuant to paragraph 7 of the Court's Case Management and Scheduling Order, (Dkt. No. 19).

### STATEMENT OF THE CASE

This case arises from a controversy over the extent and nature of the authority of a state-designated protection and advocacy system to enter a county-operated jail to investigate a report of abuse or neglect. The Plaintiff, Disability Rights Florida (f/k/a Advocacy Center for Persons with Disabilities, Inc.), is the protection and advocacy system as required by federal law for the State of Florida, (hereinafter the "P&A"), charged with enforcing numerous statutes, including the Protection and Advocacy for Individuals with Mental Illness

1

("PAIMI").[1] After receiving a report of possible abuse or neglect in the Infirmary of the Polk County Jail, the P&A sought access to the infirmary itself, to at least two individuals in the infirmary, and the opportunity to speak with other individuals with disabilities in the infirmary.[2] The Defendant, Grady Judd, is the Sheriff of Polk County, Florida (hereinafter the "Defendant"), and is responsible for the direction, organization, and control of the jails in Polk County, including the jail where the P&A was denied access.

## FACTUAL BACKGROUND

On September 1, 2010, the P&A received a phone call from a confidential informant stating that the informant had observed persons in the infirmary of the Polk County Jail in Bartow, Florida ("Infirmary"), who appeared to be mentally ill and were being restrained while in the Infirmary. Specifically, the confidential informant identified one individual by name—Georgia Holloway—and stated that she had suffered broken teeth while in the custody of the jail. Holloway was reported as being restrained with one foot and one hand cuffed to a bed. Additionally, the confidential informant described a white male in the infirmary whose hands and feet were secured with restraints to the cot he was laying

---

[1] Client Assistance Program (CAP), 29 U.S.C. § 732; Protection and Advocacy of Individual Rights (PAIR), 29 U.S.C., § 794(e); Protection and Advocacy for Assistive Technology (PAAT), 29 U.S.C. §§ 2201, et seq.; Protection and Advocacy for Persons with Traumatic Brain Injuries (PATBI), 42 U.S.C. § 300d-53; Protection and Advocacy for Beneficiaries of Social Security (PABSS), 42 U.S.C. §§ 1320b-2l; Protection and Advocacy for Individuals with Mental Illnesses (PAIMI), 42 U.S.C. §§ 10801, et seq.; Protection and Advocacy for Persons with Developmental Disabilities (PADD), 42 U.S.C. §§ 15001, et seq.; and Protection and Advocacy for Voting Access (PAVA), 42 U.S.C. §§ 15461 et seq.
[2] This matter originally also involved a claim against Defendant for denying access to records, but that claim has been dismissed via stipulation of the parties. See Dkt. No. 41.

2

naked on. The unnamed white male appeared to be suffering from symptoms of psychosis, as he was screaming and appeared to be hallucinating.

Based upon this report, the P&A made a determination that it should investigate the Infirmary to ensure that individuals with disabilities eligible for protection under PAIMI were not being subjected to abuse or neglect. On September 2, 2010, two P&A employees, advocate/investigator Linda Siemer and attorney Paul Liles, went to the Polk County Jail (the "Jail") in the afternoon. They did not apprise the Jail of their visit beforehand to preserve the scene that the confidential informant had observed.

Upon arriving at the Jail, the employees of the P&A provided their identification, including their driver's licenses, business cards, and employee identification cards. Each of the employee's P&A identification cards provided the employee's name, the name of the P&A, a photo of the individual, and, on the back of the card, the federal statutes that are the sources of the P&A's authority.

The P&A employees stated that they had received a report of abuse or neglect of inmates in the Infirmary and requested access to Georgia Holloway, the naked restrained white male, the infirmary, and any other individuals with disabilities in the Infirmary. Jail staff denied that there were any individuals with disabilities in the Infirmary and refused to provide access without a court order. In an effort to overcome this obstacle, the attorney P&A employee produced his Florida Bar card and the Defendant allowed the P&A's employees to meet with Georgia Holloway in the attorney's visitation area, but not the Infirmary where the

confidential informant had observed her. Access to the unnamed white male, the Infirmary, and any other individuals with disabilities in the infirmary was denied. No written statement of why the requested access was denied was provided at that time by Jail staff.

The P&A employees met with Georgia Holloway and personally observed that she had suffered injury to her upper front teeth—one was broken to the root and the other was totally missing. She was brought into the attorney meeting room in a wheelchair and had one hand and one foot cuffed to the chair. Holloway responded affirmatively to a question of whether she had been in the Infirmary. However, due to her disabilities, Holloway was unable to provide information to further the investigation.

After meeting with Holloway, the P&A's employees requested access to Holloway's medical records to investigate the circumstances of her injuries. Jail staff did not believe that records access was within the P&A's authority and the Defendant's attorneys would be in contact regarding the request. At that time, the P&A's employees left the Jail without seeing the unnamed white male, the Infirmary, or any individuals with disabilities who were in the Infirmary.

On September 3, 2010, the same P&A employees—Siemer and Liles—returned to the Jail to again attempt to complete the investigation of the confidential informant's report. Again, the P&A sought access to: the Infirmary, Holloway, the unnamed white male observed in the Infirmary, any individuals with disabilities in the Infirmary, Holloway's medical records, the Correctional Medical

Services ("CMS") policies and procedures for the Infirmary, and any incident reports regarding Holloway's teeth.

Jail staff allowed Siemer and Liles to again meet with Holloway, this time in the Infirmary. However, Holloway was the only visible inmate in the Infirmary shown to the P&A at that time. Several Jail staff were also present. The P&A's employees were allowed to review the medical files for Holloway, as well as CMS' policies and procedures. However, Jail staff renewed their prior oral statement that no one in the Infirmary had a disability and again denied access to the unnamed white male and any other individuals in the Infirmary with a disability.

Through multiple correspondence over the next few months, the P&A continued to attempt to secure access to complete its investigation, but has not made any further visits to the Jail based upon the Defendant's denial of access. On order of this Court, the Defendants provided information that documents the presence of at least two additional individuals with disabilities who were in the Infirmary on September 1, 2010, as well as confirming the presence of both Holloway and the previously-unnamed white male, Jonathan Harvey.

## LEGAL ISSUES

It is important to note that this case centers on the P&A's access authority to conduct an investigation after receiving a report of abuse or neglect, rather than what the results of the investigation would ultimately be. Specifically, the Court is being asked to declare both the right and scope of the P&A's access

when it receives a report of abuse or neglect in the Infirmary of the Polk County Jail as required by federal law.

### A. PAIMI ACT

Under the PAIMI Act, 42 U.S.C. § 10801 *et seq.*, a P&A "shall have the authority to investigate incidents of abuse and neglect of individuals with mental illness if the incidents are **reported** to the system **or** if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 10805(a) (emphasis added). "Access to **facilities** and **residents** shall be extended to all authorized agents of a P&A system." 42 C.F.R. § 51.42(a) (emphasis added).

Abuse is defined by the PAIMI statutes as "any act or failure to act by an employee of a facility rendering care or treatment which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or may have caused, injury or death to a individual with mental illness" and includes "the use of bodily or chemical restraints on a individual with mental illness which is not in compliance with Federal and State laws and regulations." 42 U.S.C. § 10802(1).

Neglect is defined as "a negligent act or omission by any individual responsible for providing services in a facility rendering care or treatment which caused or may have caused injury or death to a individual with mental illness or which placed a individual with mental illness at risk of injury or death, and includes an act or omission such as the failure to establish or carry out an appropriate individual program plan or treatment plan for a individual with mental

illness, the failure to provide adequate nutrition, clothing, or health care to a individual with mental illness, or the failure to provide a safe environment for a individual with mental illness, including the failure to maintain adequate numbers of appropriately trained staff." 42 U.S.C. § 10802(5).

Facilities are defined to include "hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and **jails** and prisons." 42 U.S.C. § 10802(3) (emphasis added). The accompanying regulations expand on the definition, stating, in part, that a facility "includ[es] all general areas as well as special mental health or forensic units." 42 C.F.R. § 51.2.

The corresponding federal regulations give greater definition to the access authority created through the PAIMI Act, stating a

> P&A system shall have reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents. The P&A system shall have reasonable unaccompanied access to residents at all times necessary to conduct a **full investigation** of an incident of abuse or neglect. This authority shall include the opportunity to interview any facility service recipient, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation.

42 C.F.R. § 51.42(b) (emphasis added). Appropriate access shall be provided when requested by the P&A where:

(1) **An incident is reported or a complaint is made to the P&A system**;

7

> (2) The P&A system determines there is probable cause to believe that an incident has or may have occurred; or
> (3) The P&A system determines that there is or may be imminent danger of serious abuse or neglect of an individual with mental illness.

42 U.S.C. § 51.42(b) (emphasis added). A complaint is defined by regulation as including "any report or communication, whether formal or informal, written or oral, received by the P&A system, including media accounts, newspaper articles, telephone calls (including anonymous calls) from any source alleging abuse or neglect of an individual with mental illness." 42 C.F.R. § 51.2. A **full** investigation of a complaint "means the access to facilities, clients and records authorized under this part that is necessary for a P&A system to make a determination about whether an allegation of abuse or neglect is taking place or has taken place." *Id.* The regulations also state that "[a]ccess to facilities, records or residents shall not be delayed or denied without the prompt provision of written statements of the reasons for the denial." 42 C.F.R. § 51.43.

The P&A received a call from a confidential informant who made an informal report that there were at least two individuals personally observed in the Infirmary on September 1, 2010 who appeared to be mentally ill and abused or neglected through injury to their person or improper restraint, respectively. Upon receiving the report of the broken tooth for Holloway and the psychotic behavior of the naked restrained male, the P&A's access authority was invoked. *See* 42 U.S.C. § 51.42(b)(1). The only necessary intervening step was for the P&A make a request, which was done by the P&A's employees on September 2 & 3, 2010.

8

The Defendant seeks to justify its policies and procedures as a defense to a determination of probable cause by the P&A;[3] however, the PAIMI Act and its corresponding regulations are explicit that upon receipt of a report or complaint the P&A "shall" have the access claimed by the P&A. Consequently, it is not necessary to analyze whether the P&A had probable cause to conduct an investigation of abuse or neglect; the confidential informant's detailed complaint/report of abuse or neglect when Holloway's broken teeth and Harvey's four-point naked restraint triggered access authority without reference to a probable cause determination.

Based upon the foregoing, it is evident that the Defendant failed to meet his obligations under the PAIMI Act as:

(1) Reasonable unaccompanied access to the naked restrained male, Jonathan Harvey (the alleged victim of abuse), was never granted;

---

[3] The Defendant's argument cannot be sustained. A P&A "does not have to have proof of abuse or neglect at the time it seeks to undertake an investigation; if it had proof of abuse or neglect, no further investigation would be necessary." *Maryland. Disability Law Ctr. v. Mount Wash. Pediatric Hosp.*, 664 A. 2d 16, 23 (1995). As Chief Judge Thompson noted in the *J.S. Tarwater Devtl. Ctr.* case,

> The defendants, however, miss the point; they put the cart before the horse. Whether the defendants' evidence outweighs the phone call is not yet before the Advocacy Program for determination. Rather, the issue is whether there is enough evidence to establish probable cause and thereby warrant a further inquiry, that is, an investigation, by the Advocacy Program. The anonymous phone call provides enough evidence to support allegations of abuse and neglect and thereby establishes probable cause.

*Id.*, 894 F. Supp. 424, 429 (M.D. Ala. 1995), *aff'd*, 97 F. 3d 492.

(2) Reasonable unaccompanied access to other individuals in the infirmary with disabilities (facility service recipients) was never granted;

(3) Reasonable unaccompanied access to the infirmary (a general area of the jail and an area of the jail used by residents) was never granted;

(4) Appropriate access to conduct a full investigation of the alleged abuse or neglect was never granted; and

(5) The Defendant failed to promptly provide a written statement of the reasons for denial of access to the requested individuals and facility areas.

## B.   DECLARATORY RELIEF

The parties are in disagreement as to the right and scope of the P&A's access authority when it receives a report of abuse or neglect; thus, the P&A seeks declaratory relief.

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The P&A must first "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

As the Defendant denied, and continues to deny, access to the Polk County Jail Infirmary and persons in the Infirmary, there is an actual controversy within the jurisdiction of the Middle District of Florida. The Complaint involves the review and interpretation of federal statutes, and the controversy is real and immediate as the P&A cannot fulfill its statutory obligation. *See, e.g.*, 42 U.S.C. §§ 10801(b)(1) & (2)(B). Thus, the allegations in the Complaint satisfy each of the elements for declaratory relief. *See Dairyland Ins. Co. v. Crews*, No. 8:06-cv-176-T26-MAP, 2006 WL 4540541, at *3 (M.D. Fla., Dec. 7, 2006) (granting summary judgment in declaratory judgment action).

### C.     PERMANENT INJUNCTIVE RELIEF

To obtain permanent injunctive relief, the P&A must show four elements:

(1)     irreparable injury;

(2)     no adequate remedy at law;

(3)     the threatened injury to the Plaintiff outweighs the harm an injunction may cause the Defendant; and

(4)     granting the injunction would not disserve the public interest.

*See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Eleventh Circuit also requires that the moving party be successful on the merits. *See Klay v. United Healthgroup, Inc.*, 376 F. 3d 1092, 1097 (11th Cir. 2004).

11

There is ample case law supporting the contention that denying the access of a P&A is grounds for injunctive relief. "[A] host of federal authority holds that irreparable harm exists when a P & A system is unable to fulfill its mandate under federal law, that the threatened injury of denying the injunction outweighs the harm caused by the injunction, and that granting the injunction would not disserve the public interest." *J.H. ex rel. Gray v. Hinds County, Miss.*, No. 3:11–cv–327–DPJ–FKB, 2011 WL 3047667, at *2 (S.D. Miss., Jul. 25, 2011) (*citing Mich. Prot. & Advocacy Serv., Inc. v. Evans,* No. 09–12224, 2010 WL 3906259, at *5 (E.D. Mich., Sept. 30, 2010) (*citing Hartford Bd. of Educ.,* 355 F. Supp. 2d at 653; *Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.,* 365 F. Supp. 2d 877 (S.D. Ohio 2005); & *Wisconsin Coal. for Advocacy, Inc. v. Czaplewski,* 131 F. Supp. 2d 1039 (E.D. Wis. 2001)). *See also Stalder,* 128 F. Supp. 2d 358.

When seeking permanent injunctive relief, a Connecticut P&A was also required to "show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *Protection & Advocacy for Persons with Disabilties v. Armstrong*, 266 F. Supp. 2d 303, 311(D. Conn. 2003) (granting summary judgment to P&A access to correction facility). The court stated:

> there can be no dispute that Connecticut P & A has no other adequate remedy at law, and that it will be irreparably harmed if it is 'prevented from pursuing fully its right to access records ... in pursuit of its duty to investigate circumstances providing probable cause to believe abuse or neglect may be occurring.'

*Id.* (*quoting Iowa Prot. & Advocacy Servs., Inc. v. Rasmussen,* 206 F.R.D. 630, 635 (S.D. Iowa 2001)).

The Defendant's continued denial of the P&A's access authority has violated and continues to violate federal law. *See, e.g., Oklahoma Disability Law Ctr., Inc. v. Dillon Family & Youth Servs., Inc.*, 879 F. Supp. 1110, 1112 (N.D. Okla. 1995). The P&A cannot fulfill its statutory obligation to investigate complaints and reports of abuse or neglect without access to (1) observe the individual and the place where the alleged abuse or neglect occurred, and (2) interview witnesses who may have knowledge to corroborate the report. There is no other agency who will fulfill the statutory duties of the P&A when access is denied, creating irreparable harm both to the P&A and the population it is mandated to protect; yet, granting the injunction causes no harm to Defendant. Without this Court's order, Defendant has shown no willingness to permit the P&A to properly exercise its access authority.

Granting the injunction would not disserve the public interest as the federal statutes creating the P&A insures service to the public interest by requiring the P&A to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system ...." 42 U.S.C. § 10801.

The elements of *eBay* are satisfied and the injunction should be issued when, as in *Klay*, Plaintiff is successful on the merits.

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Hank B. Campbell, Esquire (*h.campbell@vcttalawyers.com*) & William T. McKinley, Esquire (*b.mckinley@vcttalawyers.com*), VALENTI CAMPBELL TROHN TAMAYO & ARANDA, P.A., Post Office Box 2369, Lakeland, Florida 33806-2369, Attorneys for the Defendant, and a courtesy copy to the Judge's chambers (*chambers_flmd_scriven@flmd.us.courts.gov*).

By   s/ Paul E. Liles
Paul E. Liles, Esquire
Florida Bar No. 0921270
Senior Trial Counsel
*paull@DisabilityRightsFlorida.org*
Lead Trial Counsel
Christopher White, Esquire
Florida Bar No. 0060109
*christopherw@disabilityrightsflorida.org*
Co-counsel
**Disability Rights Florida, Inc.**
1000 N. Ashley Drive, Suite 640
Tampa, Florida 33602
(850) 488-9071   Telephone
(850) 488-8640   Facsimile

and

By   s/ Kristen Cooley Lentz
Kristen Cooley Lentz
Florida Bar No. 649635
*klentz@filsinc.org*
**Florida Institutional Legal Services, Inc.**
14260 West Newberry Road
Suite #412
Newberry, FL  32669
(352) 375-2494   Telephone
(352) 331-5202   Facsimile
Co-Counsel

14