**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

DISABILITY RIGHTS FLORIDA, INC.,
a Florida non-profit corporation,

      Plaintiff,

                                 Case No. 8:10-cv-2666-T-26TGW

vs.

GRADY JUDD, in his official capacity as
Sheriff of Polk County, Florida,

      Defendant.
_____/


**<u>DEFENDANT'S TRIAL BRIEF</u>**

      Pursuant to the Court's Order, Defendant, GRADY JUDD, by and through

the undersigned attorneys, hereby serves his Trial Brief.

DISABILITY RIGHTS FLORIDA, INC. v. GRADY JUDD, SHERIFF
CASE NO. 8:10-cv-2666-T-26TGW
DEFENDANT'S TRIAL BRIEF


# TABLE OF CONTENTS

I.      STATEMENT OF THE CASE

        A.      Background

        B.      Statement of the Facts

II.     CITATIONS OF AUTHORITY AND ARGUMENTS ADDRESSING
        DISPUTED ISSUES OF LAW

        A.      Declaratory and Injunctive Relief

        B.      Protection and Advocacy Acts, Associated Regulations, and Case
                Law

        C.      Disputed Issues of Law

III.    PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

00125197-2

## I.      STATEMENT OF THE CASE

### A.      Background

Plaintiff[1] filed a single count Complaint on November 29, 2010, seeking declaratory and injunctive relief against Defendant, GRADY JUDD, related to Plaintiff's investigation of an alleged "report that persons with disabilities were being subjected to abuse and neglect in the infirmary of the Polk County Jail in Bartow, Polk County, Florida."   Plaintiff alleges it received such a report and conducted an investigation "pursuant to [Plaintiff's] finding of probable cause of abuse and neglect occurring at the Infirmary."   Plaintiff further requested the Court "[d]eclare that JUDD's actions and inactions are violations of the PAIME Act, PADD Act, PAIR, and related federal regulations" and "[e]njoin JUDD from interfering with [Plaintiff's] access to the facilities, residents, and residents' records without advance notice and within a reasonable time."   This Court subsequently granted the Parties' Stipulated Motion to Dismiss Records Claims in its Order dated May 18, 2011.   Pursuant to the Order, the only remaining claims, contested by Defendant, "are the right and scope of Disability Rights Florida's access to the Polk County Jail facilities and persons within the facilities when investigating reports of abuse and neglect within the facilities and whether either party is entitled to attorney's fees and costs."

---

[1] Disability Rights Florida, Inc. (formerly known as "The Advocacy Center for Persons with Disabilities, Inc.")

Defendant's affirmative defenses are that Plaintiff's claims are based on unsupported, inappropriate demands Plaintiff made of Defendant on its initial investigatory visit, including requests or demands for unfettered access beyond its authority; that Plaintiff refused or failed to respond to requests to provide specific authority or asserted nonexistent or unverifiable grounds for authority; and that Plaintiff has failed to state a cause of action for injunctive relief, including not providing a factual basis for equitable relief.

### B.    Statement of the Facts

The parties filed competing Motions for Summary Judgment, and Defendant filed a Motion for Judgment on the Pleadings.  In denying the Motions for Summary Judgment, this Court found "that genuine issues of material fact exist as to whether a confidential informant's report of Defendant's use of restraints in a jail environment constituted probable cause for Plaintiff's investigation and as to whether Plaintiff was given reasonable and timely access, within the scope of PAIR, PADD, and PAIMI, to investigate the jail facility given the obligations of jail officials to maintain order, discipline, and security."  (Doc. 92, p.3).  Plaintiff purportedly received a report from an unidentified informant on or before the morning of September 1, 2010.  Plaintiff planned and plotted for well over 24 hours before making an unannounced visit to the Central County Jail Facility of the Polk County Jail System on the afternoon of September 2, demanding, without immediately verifiable authority and while refusing to provide any reasonable explanation as to the nature of its requests, immediate and

unlimited access to the Central County Jail Infirmary, its patients, and its patients' records.

Plaintiff sent Paul Liles, an attorney employed by Plaintiff, together with Linda Siemer, an investigator for Plaintiff, to Defendant's facility.  Ms. Siemer explained that it was decided that Mr. Liles should participate in the investigation because not everyone understands Plaintiff's authority to have access to facilities.  Even so, on September 2, Mr. Liles and Ms. Siemer provided limited, vague, and even contradictory information concerning the reason and authority for Plaintiff's demands (e.g. providing only an Amended Executive Order without reference to its authority, and further providing a letter regarding access to schools and FERPA).  As a result, Defendant could not verify Plaintiff's authority or responsibly grant Plaintiff's demand for immediate and unlimited access to the Infirmary, its patients, and its patients' records.  On that first day, Defendant granted Plaintiff access to Georgia Holloway, the finally revealed subject of Plaintiff's investigation; researched Plaintiff's authority; and called Plaintiff that same day to invite Plaintiff to return to the facility the following morning for a complete inspection of any areas for which Plaintiff had probable cause to investigate, and to review whatever records were reasonably sought.  Although Defendant was ready to meet in the morning, Plaintiff asked to postpone the meeting until the afternoon.  Thus, Defendant granted reasonable access to Plaintiff to the facility and its records consistent with Plaintiff's request

Plaintiff did not request access to any other individual, areas of the facility or records for which it claimed to have authority or probable cause, and acknowledged that Defendant had reasonably complied with its requests. Despite Plaintiff's continued assertions to the contrary, Plaintiff has never requested further access to the facility.   At some point during its inspection, Plaintiff informed Defendant that having inmates with mental disabilities in restraints was, in Plaintiff's opinion, abuse; conceded that other jail facilities, hospitals, etc., also have inmates with mental disabilities in restraint; and admitted that Plaintiff was seeking a test case as to such restraint.  Plaintiff then confided that it did not matter how Defendant responded to Plaintiff's demands as, "we were going to sue you no matter what."

## II.   CITATIONS OF AUTHORITY AND ARGUMENTS ADDRESSING DISPUTED ISSUES OF LAW

### A.   Declaratory and Injunctive Relief

The Declaratory Judgment Act, 28 U.S.C. s 2201, expressly provides: 'In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'   28 U.S.C. § 2201(emphasis added).  In cases involving declaratory judgments, the threshold question is "whether a justiciable controversy exists."  *Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995)(citations omitted).   For a case in controversy to be said to exist within the meaning of Art. III of the Constitution and of the Declaratory

Judgment Act, a genuine threat must be said to exist. *Steffel v. Thompson*, 415 U.S. 452 (1974)(finding  plaintiff alleged threats of prosecution that could not be characterized as imaginary or speculative *Id*. at 459).  The "credible threat must be shown to be alive at each stage of the litigation."  Id. at n. 10 (noting that "[t]he rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed"); see *Golden v. Zwickler*, 394 U.S. 103 (1969) (finding no extant controversy where complaint described anticipated distribution of election handbills for a candidate, but it was subsequently revealed the candidate was no longer seeking election and no immediate prospect of him resuming his campaign activities existed).

Regarding the injunctive relief sought by Plaintiff, in the absence of some demonstration that there is a real danger that an act complained of will take place, federal courts generally refrain from enjoining future conduct.  *Oklahoma Disability Law Center, Inc. v. Dillon Family and Youth Services, Inc.*, 879 F.Supp. 1110, 1112 (N.D.Okl. 1995).   In *Dillon Family and Youth Services,* the court required release of treatment records of two specific patients under PAIMI, but declined to issue a blanket injunction that would pertain to future records requests).  *Id.*   A claim must be sufficiently mature to "permit effective decisionmaking by the court."  *Georgia Advocacy Office, Inc. v. Camp* , 172 F.3d 1294, 1298 (11th Cir. 1999)(reasoning that an action seeking injunctive relief pursuant to 42 U.S.C. §§ 10801-10807 was not ripe for judicial review and "too speculative to create a substantial justiciable controversy."  (*Id.* at 1299).

What is significant in this case is that Plaintiff's remaining pleadings and the record evidence show that Plaintiff is concerned with restraint of inmates in a jail environment, a concern which does not present a justiciable controversy and further fails to demonstrate a real danger of future conduct (involving abuse and neglect) that the Court could or should enjoin.  In *Unified School Dist. No. 259, Sedgwick County, Kan. v. Disability Rights Center of Kansas*, a defendant school district sought declaratory relief concerning its obligations to provide records to a protection and advocacy agency under FERPA, PAIMI, and DDA.  *Unified School Dist. No. 259, Sedgwick County, Kan. v. Disability Rights Center of Kansas*  491 F.3d 1143 (10th Cir. 2007).  After the agency withdrew its records request, the district court determined the factual basis for the dispute had disappeared and dismissed the declaratory judgment action as moot.  *Id. at 1145*.  The Tenth Circuit Court of Appeals agreed, reasoning that an agency's authority to access records under PAIMI and DDA depends heavily upon the facts of the agency's demand, that a future request was "theoretical" and would not be a repetition of the "same action," and found that no exceptions to the mootness doctrine applied.  *Id.*at 1149-1150(quotations omitted).    Stating that any ruling would have no "effect in the real world," and would in effect be "an advisory opinion," the Court dismissed the appeal as moot. *Id.*at 1150 (internal citations omitted).

B.    **Protection and Advocacy Acts, Associated Regulations, and Case Law**

1. **The Acts**

Under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. §§ 10801-10851, the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. §§ 15001- 15115, and the Protection and Advocacy of Individual Rights Act ("PAIR"), 29 U.S.C. § 794e (2000) ("collectively, the "P & A Acts"), a Protection and Advocacy System is authorized to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 10805(a)(1)(A). Also, the law states that such systems "shall ... have access to facilities in the State providing care or treatment." *Id.* § 10805(a)(3). Under PAIMI, the term "facilities" includes a broad range of types of facilities, such as "hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and prisons." *Id.* § 10802(3).  In this case, however, Plaintiff's basis for its investigation is a report that a person or persons with disabilities were restrained in the Central County Jail Facility, without alleging or proving any impropriety of restraint, or resulting injury or risk of an injury.   It is also significant that Defendant provided access to Plaintiff, to the extent Plaintiff requested access, as soon as Defendant understood its obligations pursuant to the federal statutes and clearly within a reasonable time frame under the circumstances.

## 2.  Regulations under the P & A Acts

Regulations have been promulgated under the DD Act and PAIMI.  The regulations define or refer to terms such as "access," "abuse," "neglect," "probable cause," and "complaint;" the definitions are provided below:

ACCESS

The Code of Federal Regulations under the DD Act and under PAIMI refer to access to persons.   Under the DD Act CFR, "access to individuals with disabilities" states:

> A system shall have reasonable unaccompanied access to public and private facilities which provide services, supports, and other assistance for individuals with developmental disabilities in the State when necessary to conduct a full investigation of an incident of abuse or neglect under section 142(a)(2)(B) of the Act. This authority shall include the opportunity: to interview any facility service recipient, employee, or other person, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation; and to inspect, view and photograph all areas of the facility's premises that might be reasonably believed by the system to have been connected with the incident under investigation.

45 CFR § 1386.22(f).   Under the regulations promulgated pursuant to PAIMI, titled "[a]ccess to facilities and residents" access is defined as follows:

> P&A system shall have reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents. The P&A system shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect.

42 CFR § 51.42.

ABUSE

Under the regulations promulgated pursuant to PAIMI and the DD Act, the use of excessive force when placing an individual in physical restraints or the use of restraints in a manner not in compliance with Federal and State laws and regulations is considered abuse:

> [a]buse means any act or failure to act…which caused, or may have caused, injury or death to an individual with mental illness [or developmental disabilities], and includes but is not limited to acts such as…the use of excessive force when placing [such an] individual…in bodily restraints [or] the use of bodily or chemical restraints which is not in compliance with Federal and State laws and regulations…

42 CFR § 51.2; 45 CFR § 1386.19.  See *Connecticut Office of Protection and Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.* 464 F.3d 229, 234 n. 2 (2d Cir. 2006).

NEGLECT

The same regulations also define neglect, stating:

> Neglect means a negligent act or omission by an individual responsible for providing services in a facility rendering care or treatment which caused or may have caused injury or death to an individual with mental illness [or developmental disabilities] or which placed [such] an individual…at risk of injury or death, and includes, but is not limited to, acts or omissions such as failure to: establish or carry out an appropriate individual program or treatment plan (including a discharge plan); provide adequate nutrition, clothing, or health care…; and the failure to provide a safe environment which also includes failure to maintain adequate numbers of appropriately trained staff.

42 CFR § 51.2; 45 CFR § 1386.19.

PROBABLE CAUSE

The regulations promulgated pursuant to the DD Act define probable cause as follows:

> Probable cause means a reasonable ground for belief that an individual with developmental disabilities has been, or may be, subject to abuse or neglect. The individual making such determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect.

45 CFR § 1386.19. The regulations under PAIMI vary slightly from the DD Act regulations:

> Probable cause means reasonable grounds for belief that an individual with mental illness has been, or may be at significant risk of being subject to abuse or neglect. The individual making such determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect.

42 CFR § 51.2

COMPLAINT

The regulations under PAIMI and the DD Act define a "complaint" as including:

> any report or communication, whether formal or informal, written or oral, received by the system including media accounts, newspaper articles, telephone calls (including anonymous calls), from any source alleging abuse or neglect…

42 CFR § 51.2; 45 CFR § 1386.19.

PERSONS COVERED

Today, the DD Act does not use a specific condition to define a "developmental disability" but uses a definition based on functional limitations.

See *Tennessee Protection & Advocacy, Inc. v. Wells,* 371 F.3d 342, 347 (6th

Cir. 2004).  The statute defines a "developmental disability" as a "severe, chronic disability of an individual that [ ] is attributable to a mental or physical impairment or combination of mental and physical impairments" and, among other criteria, "results in substantial functional limitations" in a combination of areas such as "[s]elf-care," "[r]eceptive and expressive language," "[l]earning," [m]obility," "[s]elf-direction," "capacity for independent living."   See 42 U.S.C.A. § 15002. The regulations under PAIMI define an "individual with mental illness" as "an individual who has a significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the State and…[w]ho is involuntarily confined in a detention facility, jail or prison."  42 CFR § 51.2.

Despite Plaintiff's urgings, the underlying facts in this case do not show a violation the federal law cited above, do not show abuse or neglect of inmates, and do not show a failure to grant Plaintiff reasonable access to a Jail.

### 3.  Case Law and State Statutes

<u>DEFERENCE</u>

Prison officials have a legitimate interest, of course, in the maintenance of security, order, and discipline in prisons.  *Pell v. Procunier*, 417 U.S. 817 (1974). A prisoner's confinement is of necessity subject to the broad discretion of those managing the jail.  *Kitchen v. Upshaw*, 286 F.3d 179 (4th Cir. 2002).  Officials must be given considerable latitude and deference in the maintenance of security, order, and discipline.  *Bell v. Wolfish*, 441 U.S. 520 (1979).  Even when

considering constitutional protections, deference is granted to the judgment of those charged with the day to day operation of an institution. See *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982)(considering the liberty interests of institutionally committed mentally retarded persons, who may not be punished at all *Id.* at 315-316).   For example, the liberty interests of mentally disabled persons are not absolute, "[t]here are occasions in which it is necessary for the State to restrain the movement of residents—for example, to protect them as well as others from violence."  *Id.* at 320.

The P&A Acts and regulations promulgated pursuant to the statutes expressly recognize states' authority to regulate the restraint of persons covered under the Acts.  When defining abuse (see above), the regulations expressly state that abuse includes "the use of excessive force when placing [such an] individual…in bodily restraints [or] the use of bodily or chemical restraints which is not in compliance with Federal and State laws and regulations."   42 CFR § 51.2; 45 CFR § 1386.19.  See *Connecticut Office of Protection and Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.*  464 F.3d 229, 234 n. 2 (2d Cir. 2006).   The Acts and regulations contemplate the use of restraint in various institutional contexts.

For example, pursuant to section 394.459, Florida Statutes, titled "Rights of Patients," under  the Mental Health Act, the use of restraint and seclusion are contemplated, including criteria and procedures for the implementation of such "bodily control and physical management techniques."  See Fla. Stat. § 394.459.

Certainly, county jails apply restraint, but are not considered receiving facilities under the Mental Health Act. See Fla. Stat. § 394.455(26).   The Sheriff, as a constitutional officer of the State, must comply with mandates from a number of entities which have jurisdiction and authority, including the Department of Corrections, the Agency for Health Care Administration, additional accrediting agencies and organizations as listed above, with regard to the question of the use of physical restraint. (See Affidavit of Philip Hoelscher).   The P&A Acts contemplate the inclusion of state regulation within the statutory framework.

REASONABLE ACCESS

The Eleventh Circuit, in addressing a case where a plaintiff's request for access to a facility was in the context of a specific person, found no support for an injunction for general access.  *Georgia Advocacy Office, Inc. v. Camp*, 172 F.3d 1294, 1298 (11th Cir. 1999).  The Court noted that the complaint included a separate prayer for relief seeking access, but found that the plaintiff's requests for access to a facility were all in the context of a specific person, which did not support an injunction for general-access. *Id.* at 1296-1298.  As stated above, the basis for Plaintiff's complaint involves the restraint of a specific person, and it now seeks equitable relief for general access.  The interpretation of "reasonable access" in this context must be considered in light of the mandates of prison officials.

The question of reasonable access has been considered in contexts other than a jail environment, and courts have found that a balanced approach is

required.   In a hospital environment, the court recognized that "reasonable access" had to balance the function of the P&A and the effects of the access requested under that function.   See *Equip for Equality, Inc. v. Ingalls Memorial Hosp.*, 292 F.Supp.2d 1086, 1100-1101 (N.D.Ill. 2003)("the purpose of that function and its effect on patients and programs must strike an appropriate balance" *Id.*).   The *Equip for Equality, Inc.* court considered that more strict requirements were appropriate for access to patients versus access to facilities themselves.   *Id.* at 1100.   In a school environment, a court granted summary judgment in favor of a P & A system to the extent that it may have unannounced access to facilities, but granted summary judgment in favor of the defendant school to the extent that advance notice for access to patients was reasonable. *Pennsylvania Protection & Advocacy, Inc. v. Royer–Greaves School for the Blind*, *No. 98–3995*, 1999 WL 179797, at *11–12 (E.D.Pa. 1999).

REVIEW OF PROBABLE CAUSE OR COMPLAINT

In *Iowa Protection & Advocacy Services, Inc., v. Gerard Treatment Programs, LLC,* 152 F.Supp.2d 1150 (N.D. Iowa 2001), the court found that a defendant is entitled to seek judicial review of a P&A's probable cause determination.[2]   In *Disability Law Center v. Discovery Academy*, where a P&A System failed to come forward with evidence to support a finding of probable cause or complaint of any incident of abuse for any individual other than a person

_____

[2] In this case, Defendant seeks such review (as well as a review of the substance of the report), not prior to granting access, which it did, but in light of Plaintiff's request for equity relief from the Court.

who was no longer housed with the defendant boarding school, the Court granted summary judgment dismissing the P&A's complaint for injunctive and declaratory relief. *Disability Law Center v. Discovery Academy,* 2010 WL 55989 (D. Utah 2010)(stating "[n]othing in the statute suggests a general investigative power absent reference to an identified individual." *Id.* at *3). See also *Ohio Legal Rights Service v. Buckeye Ranch, Inc.,* 365 F.Supp.2d 877, 887 (S.D. Ohio 2005)(denying in part P&A's motion for summary judgment where court found no evidence that at the time it made a request that it had probable cause to believe abuse or neglect had occurred). In *Arizona Center for Disability Law v. Allen,* 197 F.R.D. 689 (D. Ariz. 2000), the court held that a state's P & A system is the final arbiter of probable cause. *Arizona Center for Disability Law v. Allen,* 197 F.R.D. 689 (D. Ariz. 2000). However, the court further determined that the question of whether the defendants had promptly provided access was a fact–bound inquiry that could not be resolved at summary judgment. *Id.* at 693.

  **C. Disputed Issues of Law**

  As listed in the Parties' Joint Pretrial Statement, the disputed issues of law and fact (other than case law listed by Plaintiff) are as follows:

  1. Whether a live justiciable case or controversy exists, or in other words, whether Plaintiff's revised allegations, which allege a past wrong but no continuing or future harm, show a credible threat of injury, or "sufficient immediacy and reality to warrant the issuance of a declaratory judgment" or demonstrate a real danger of any conduct on the part of Defendant which

constitutes an ongoing or future violation of federal law as required by the justiciability doctrine.

2.      Whether Plaintiff's revised allegations sufficiently plead irreparable injury and the inadequacy of legal remedies as required to support injunctive relief.

3.      Whether Plaintiff's revised allegations contain a claim for access which is sufficiently mature to permit effective decisionmaking by the Court or are too speculative to create a substantial justiciable controversy.

4.      Whether the "rights asserted" by Plaintiff are too unclear to be of a type that an equity court will protect.

5.      Whether Plaintiff's withdrawal of the records request from its Complaint has extinguished any factual basis for declaratory or injunctive relief, making the claim moot such that a ruling by this Court would be theoretical in nature, resulting in the rendering of an advisory opinion.

6.      Whether a confidential informant's report of Defendant's use of restraints in a jail environment constituted probable cause for Plaintiff's investigation or constituted a report of abuse or neglect.

7.      Whether Plaintiff was given reasonable and timely access, within the scope of PAIR, PADD, and PAIMI, to the jail facility given the obligations of jail officials to maintain order, discipline, and security.

III.     **PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A.     The alleged unidentified informant's report of Defendant's use of restraints in a jail infirmary environment did not constitute probable cause for Plaintiff's investigation, and further, was not a report of abuse or neglect.  The record is clear and unrebutted that the restraint policies in place at the Central County Jail meet or exceed industry security and medical requirements.  The restraint policies of the Polk County Sheriff's Office and the medical provider at the Infirmary, CMS/Corizon, meet or exceed state and national standards, the Florida Model Jail Standards, and have at all material times been reviewed and accredited by, among others, the National Commission on Correctional Health Care Standards for Health Services in Jails.  Accordingly, Plaintiff's "investigation" exceeded its authority.  Plaintiff has never asserted and there is no record evidence that Defendant's policies as to restraint of inmates was improperly applied, or that injuries were sustained as part of the restraint process.

B.     Plaintiff was given reasonable and timely access, within the scope of PAIR, PADD, and PAIMI, to the jail facility given the obligations of jail officials to maintain order, discipline, and security.  Even assuming Plaintiff had some basis for its investigatory visits, Plaintiff saw Georgia Holloway on its first visit to the facility, despite the lack of information and guidance it provided on the question of the scope of its investigation and opaque or irrelevant references to the scope of its authority.  Defendant, given the lack of information and the de

minimis basis for its authority offered, was left on its own to determine Plaintiff's authority and the proper levels of access for Plaintiff's investigation, and engaged its own staff and legal department in immediately ascertaining Plaintiff's authority and proper access in the context of a jail infirmary.

C.   The circumstances of this matter cannot be repeated. Defendant's initial lack of knowledge of Plaintiff, the reason for Plaintiff's surprise demands, Plaintiff's authority, and Plaintiff's purposeful refusal to provide reasonably requested information was a necessary condition precedent for the events of September 2 and September 3, 2010.  Defendant is now familiar with Plaintiff and the statutory basis for Plaintiff's authority.  Plaintiff, for its part, may be more familiar with the concerns and practical considerations of a jail facility, although that may generous, as Plaintiff has yet to request further access subsequent to September 3, 2010.

D.   Thus, this Court should conclude as a matter of law that (1) Plaintiff did not have sufficient probable cause or a report of abuse or neglect (See *Disability Law Center,* 2010 WL 55989; *Ohio Legal Rights Service,* 365 F.Supp.2d 877; *Arizona Center for Disability Law*, 197 F.R.D. 689; *Iowa Protection & Advocacy Services, Inc.,* 152 F.Supp.2d 1150); (2) Plaintiff was given reasonable access (See *Equip for Equality, Inc. v. Ingalls Memorial Hosp.*, 292 F.Supp.2d 1086; *Georgia Advocacy Office, Inc.*, 172 F. 3d 1294); and, (3) No case of actual controversy exists for effective decision-making by this Court (See *Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*, 68 F.3d 409; *Steffel*, 415

U.S. 452; *Oklahoma Disability Law Center, Inc.*, 879 F.Supp. 1110; *Georgia Advocacy Office, Inc.*, 172 F. 3d 1294; *Unified School Dist. No. 259, Sedgwick County, Kan.,* 491 F.3d 1143).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 29th day of December, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to KATHERINE DeBRIERE, ESQ., and KRISTEN C. LENTZ, ESQ., Florida Institutional Legal Services, Inc., 14260 West Newberry Road, Suite 412, Newberry, Florida  32669 and PAUL E. LILES, ESQ., and CHRISTOPHER WHITE, ESQ., Disability Rights Florida, 1000 North Ashley Dr., Suite 640, Tampa, Florida  33602.  I FURTHER CERTIFY that a courtesy copy has been sent to the Judge's Chambers, in Word format, via e-mail: chambers_flmd_scriven@flmd.uscourts.gov.

<div style="margin-left:40%">

s/ William T. McKinley
William T. McKinley
Florida Bar No. 51115
b.mckinley@vcttalawyers.com
Hank B. Campbell
Florida Bar No. 434515
h.campbell@vcttalawyers.com
Jack P. James, III
Florida Bar No. 0107255
j.james@vcttalawyers.com
VALENTI CAMPBELL TROHN
 TAMAYO & ARANDA, P.A.
Post Office Box 2369
Lakeland, Florida  33806-2369
(863) 686-0043
(863) 616-1445 Fax
Attorneys for Defendant

</div>